UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARION PAAD,

        Plaintiff,

vs.

VILLAGE OF OXFORD,
MAUREEN HELMUTH, individually,
and JOE YOUNG, individually;

        Defendants.
_____/

Case No. 12-CV-15574

HON. GEORGE CARAM STEEH

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 23)

### INTRODUCTION

Plaintiff Marion ("Pat") Paad filed this 42 U.S.C. § 1983 action following the termination of her employment with defendant Village of Oxford. Plaintiff alleges that the defendants improperly caused criminal charges to be brought against her, which they used as a cover for their own misconduct and as justification for plaintiff's termination. Now before the court is defendants' motion for summary judgment. For the reasons that follow, the motion is denied in part and granted in part.

### BACKGROUND

Ms. Paad worked for the Village of Oxford, Michigan in an administrative capacity from at least 2000 until the termination of her employment in March 2011. Her duties included handling payments in cash for both taxes and utilities. In 2007, she received a promotion to Deputy Clerk for the Village. In October 2010, following the termination of the Clerk by the Village Council, Ms. Paad was appointed to the position of Acting Clerk

for the Village. The Village Council had the exclusive authority to terminate her employment as Acting Clerk.

When the position for a new permanent Village Clerk was posted, plaintiff applied for the position. She was scheduled for her second interview in January 2011. However, on January 25, 2011, Maureen Helmuth–Ms. Paad's friend, former City Treasurer, and then-current Village Councilwoman, met with plaintiff's boss to disclose her alleged discovery from approximately five years earlier that Ms. Paad had taken cash tax/utility payments to pay her own delinquent bills.[1]

Ms. Helmuth has explained that the timing of her decision to disclose Ms. Paad's alleged embezzlement stemmed from her concern that Ms. Paad would receive the Clerk's position and potentially subject the Village to further financial misappropriation. In any event, after Ms. Helmuth told Village Manager Joe Young about the 2006 events, Mr. Young suspended Ms. Paad with pay pending investigation. A special meeting of the Village Council was convened in late January. Plaintiff requested to meet in closed session with the Council, and did so. Neither Ms. Helmuth nor Mr. Young were in that meeting. At the conclusion of the meeting, the Village Council voted to suspend plaintiff without pay pending investigation.

---

[1] Ms. Helmuth testified at deposition that she was in the Treasurer position when she first discovered this, and that at that time she and Ms. Paad were close friends. Rather than report Ms. Paad at that time, Ms. Helmuth personally loaned either $ 6,800 or $7,800 to Ms. Paad for Ms. Paad, wholly or in part to become current on her mortgage. The parties dispute whether this money was used to pay back "borrowed" money from the Village. Ms. Helmuth did not tell anyone about the loan at the time she made it to Ms. Paad.

The following month, plaintiff was demoted back to the position of Deputy Clerk. This position, unlike that of Acting Clerk, reported to Village Manager Young. Meanwhile, following a meeting with Joe Young, Village Chief of Police Neymanowski had referred the matter to the Michigan State Police. In March 2011, Ms. Paad was charged with embezzlement. Mr. Young testified that it was only after the determination was made to prosecute Ms. Paad that he terminated her employment with the Village.

Not surprisingly, Ms. Paad's version of pertinent facts portrays Ms. Helmuth and Mr. Young in a different light. Ms. Paad denies the alleged embezzlement, describing Helmuth and Young as Village employees who regularly misappropriated taxpayer monies and properties. Plaintiff describes Helmuth as a mean alcoholic who would refer to the former Village Clerk, a man named Dan Luick who is legally blind, as "Helen Keller." Plaintiff describes Young as a "flim-flam man who plays fast and loose with taxpayers' monies," who has been fired from other municipalities for violations of their rules and regulations. Plaintiff, in short, describes herself as a scapegoat.

Plaintiff further describes a period of time during which defendant Joe Young served as the Oxford Village Treasurer, and she and former Village Clerk Dan Luick served as "de facto 'deputy treasurers.'" She states that Michigan Works volunteers and/or interns actually performed the "leg work" for Young, who was rarely in the office but insisted on being the volunteers' sole supervisor, and that she witnessed taxpayers' money being lost and misappropriated. She asserts that she then determined to go "outside of the chain of command," and scheduled a meeting with the Village Council Pro-Tem President, Tom Benner, in mid-September 2010 to describe the problems at work. Plaintiff and Dan Luick met with Benner and described their concerns about the

-3-

handling of the taxpayers' payments. Plaintiff testified at deposition that the next day, Young came to her desk and angrily told her that if she had a problem, she was to come to him and not go over his head. Plaintiff states that Luick's employment was terminated within 45 days and she was suspended within four months, after Young and Helmuth concocted a "phony story to falsely blame Pat Paad for all the monies that were missing." Plaintiff's Brf. At 4.[2] Plaintiff emphasizes that in deposition, neither Young nor the police chief could recount any confession she made concerning the alleged embezzlement, and highlights that she was acquitted of the accusation in her criminal trial.

Ms. Paad's trial was in May 2012, at which both Ms. Helmuth and Mr. Young testified. Ms. Paad did not testify, and as noted above, was acquitted of the charges. The instant lawsuit was filed in December 2012, alleging that her prosecution represented violations of the Fourth and/or Fourteenth Amendment (Count I); state law malicious prosecution (Count II); and violations of the First Amendment (Count III). Before the court is defendants' motion for summary judgment.

## ANALYSIS

Standard of Review

The entry of summary judgment is appropriate when the record demonstrates that there are no genuine issues as to any material fact in dispute and the moving party

---

[2] Defendants point to portions of Paad's deposition to support their contention that Paad has made up this rationale for her termination. Defendants appear to suggest that Paad actually thought she was terminated because she did not support Maureen Helmuth's plan to step down from the Village Council and move back into the Treasurer position.

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Sadie v. City of Cleveland, 718 F.3d 596, 599 (6th Cir. 2013).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

Discussion

(i) First Amendment Claim

Defendants first argue for summary judgment on plaintiff's First Amendment claim. As articulated by case law relied on by defendants, a successful First Amendment retaliation claim requires that (1) the statements were protected by the First Amendment; (2) that there was an adverse employment action; and (3) that the adverse action was motivated at least in part in response to the exercise of the protected speech. See Fox v. Traverse City Area Public Schools Bd. of Educ., 605 F.3d 345, 349 (6th Cir. 2010) (citation omitted).

In arguing that plaintiff did not engage in protected speech, defendants rely on Garcetti v. Ceballos, 547 U.S. 410 (2006) and caselaw in line with Garcetti, quoting from that decision: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Id. at 421. Defendants also cite Fox, 605 F.3d at 348; Haynes v. City of Circleville, 474 F.3d 357 (6th Cir. 2007); and Weisbarth v. Geauga Park Dist., 499 F.3d 538 (6th Cir. 2007) for this principle. Asserting that "there can be no doubt but that Plaintiff's statements were made in her role as Deputy Clerk and/or Acting Clerk pursuant to her own admissions...her speech 'is therefore unprotected as a matter of law because all of the speech at issue in this case, like the speech at issue in Garcetti, was made pursuant to [her] official duties.'" Defendant's Brf. at 16 (quoting Haynes, 474 F.3d at 364.)

Plaintiff, in contrast, contends that her speech was made as a citizen. She asserts this case is controlled by the case of Handy-Clay v. City of Memphis, 695 F.3d 531 (6th Cir. 2012) and that defendants are being disingenuous in disregarding that case. Plaintiff's counsel, in fact, asserts that Handy-Clay is the "reason [he] took this case and filed this lawsuit."

In Handy-Clay, the plaintiff was appointed as "FOIA/public records coordinator" for the City of Memphis. She announced that employees were getting paid for time they were actually off work and filing false paperwork to cover it up. She was fired a day later. The plaintiff in Handy-Clay then filed a § 1983 action based on the First Amendment, which was dismissed on a Fed. R. Civ. P. 12(b)(6) motion by the district court. On appeal, the plaintiff successfully distinguished her facts from those in the then-recent opinion of Garcetti. The Sixth Circuit determined that certain facts allowed plaintiff's claim to survive: the facts that (1) she went to an outside agency–the City Council–to report the violations; (2) her speech was not an "every day communication" in the course of her job; and (3) her speech was not just "quintessential employee beef." That court gave considerable weight to the fact that plaintiff's speech addressed a "public concern," i.e. taxpayer dollars being paid to municipal employees.

In the instant case, considering the facts in the light most favorable to plaintiff, she went outside of her chain of command, and made complaints about issues other than her employment situation. The court is convinced that circumstances in this case sufficiently analogous with Handy-Clay that judgment for defendants on the First Amendment claim on this basis is inappropriate. Additionally, this case is easily

distinguished from the Fox case, where the plaintiff's statements were made *to her supervisor* about her job situation. See Fox, 605 F.3d at 349.

Defendants alternatively assert that plaintiff cannot meet the causation requirement for such a claim; that the adverse employment action was taken as a response to her alleged report to Benner. However, again considering the evidence in a light most favorable to plaintiff, there is evidence that she was warned of Young's anticipated response to her report; and that Young, in fact, responded in a very negative way after learning of plaintiff's report. Furthermore, the employment of plaintiff's associate (Dan Luick) was terminated within 45 days, and plaintiff has offered evidence that Young and Helmuth met for an extended period on the day she was eligible for and anticipated appointment to the clerk position, but following the Young-Helmuth meeting, ended up facing a criminal prosecution. While this circumstantial evidence is not crystal clear, the court is convinced that the plaintiff has met the requirements for establishing a question of fact on each of the First Amendment retaliation prongs at issue in this case.

Finally, defendants make the argument that qualified immunity protects them from this claim. However, as plaintiff points out, the law concerning first amendment free speech rights in the workplace was well-established long before the facts at issue in this litigation took place. The court is convinced that under the circumstances present here, plaintiff's First Amendment retaliation claim must survive summary judgment under precedent such as Handy-Clay.

(ii) Malicious Prosecution

a) Federal Claim

Plaintiff makes a Fourth and/or Fourteenth Amendment claim under § 1983 relating to her prosecution for embezzlement.  Such a claim must show that the defendant made or influenced a decision to prosecute; that there was a lack of probable cause for the prosecution; and that the plaintiff suffered a deprivation of liberty.  See Gregory v. City of Louisville, 444 F.3d 725, 748-50 (6th Cir. 2006).  Finally, the proceeding must be resolved in the plaintiff's favor.  Heck v. Humphrey, 512 U.S. 477, 484 (1994).

In this claim plaintiff alleges, essentially, that defendants acted in concert to pursue improper criminal charges against her, of which she was acquitted.  Defendants argue in their motion for summary judgment that this claim suffers from several deficiencies, such as the fact that plaintiff was never incarcerated or detained.  However, as clarified by the case of Sykes v. Anderson, 625 F.3d 294 (6th Cir. 2010), if the public official defendants made false statements to the prosecutor which were relied upon for the prosecution, the determination by a magistrate or judge that there was probable cause to proceed, based on those lies, does not then immunize the public officials; in fact, telling lies to cause criminal prosecution constitutes a "seizure" sufficient for a malicious prosecution claim.  Furthermore, accepting the facts in a light most favorable to the plaintiff requires rejection of the defendants' qualified immunity defense, since Helmuth's claims of a "confession" by plaintiff could not have been made in "good faith."  Similarly, qualified immunity could not be used by Young as a shield if his statements to the prosecutor were untruthful.  Considering the record in favor of plaintiff, as this court must at this juncture, allows the plaintiff to survive the motion on this claim as well.

b) State Claim

Defendants contend that both Helmuth and Young are entitled to absolute immunity from plaintiff's state law claim of malicious prosecution under Mich. Comp. Laws Ann. § 691.1407(5), which provides that

> A judge, legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

However, again considering the facts in the light most favorable to the plaintiff, the issue of whether Helmuth and Young's acts were taken "within the scope" of their authority comes into question. Plaintiff has pointed to deposition testimony of Young in which he stated that he had no personal knowledge of anything stolen by plaintiff. Plaintiff's Exhibit 2 at p. 5. However, plaintiff also refers to notes taken by Young at the meeting with Captain Neymanowski in which Young wrote that plaintiff "confessed to having taken the money." See Plaintiff's Response Brf. At 5; Deposition of Young at p. 75.

Defendants also cite Odom v. Wayne Co., 482 Mich. 459 (2008), a case that addressed state law claims of false arrest and imprisonment and malicious prosecution against governmental actors. That decision stands for the proposition that governmental immunity applies if the acts are taken during the course of employment and are within the scope of the actor's authority. The court is convinced that there is a question of material fact as to whether Young's acts were taken "within the scope" of his authority. Moreover, lying about plaintiff's "confession" to induce prosecution cannot be found within the scope of either defendant's authority. Thus, the court finds the

individual defendants are not entitled to summary judgment on this claim on the basis of statutory immunity.

Finally, defendants cite Mich. Comp. Laws Ann. § 691.1407 for immunity for the Village of Oxford from the plaintiff's state law claims.[3] This statute grants immunity when it is engaged in the exercise or discharge of a governmental function, subject to limited exceptions which do not apply to this case. Defendants contend that "as it is undisputed that the Village was engaged in the operation of a governmental function–an activity that is expressly or impliedly mandated by constitution, statute, local charter or ordinance–immunity bars Plaintiff's state law claim." In response, without citation to any applicable authority, plaintiff asserts only that the Village of Oxford "ratified" the acts of its Village Council and Manager, which thus make it "liable for the acts of the individual Defendants herein." Plaintiff's citations do not support her arguments on this issue, and the court finds no question of material fact as to whether the Village of Oxford is entitled to immunity from the state claims in this case. Judgment will enter for the Village as to only plaintiff's state law claim of malicious prosecution.

## CONCLUSION

For the reasons given above, the court hereby **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment. The motion is granted only as to the Village of Oxford on plaintiff's state law claim of malicious prosecution. The motion is denied as to all other claims.

**IT IS SO ORDERED**.

---

[3]The court notes no such argument is made on behalf of the municipal defendant with respect to the constitutional claims.

Dated: June 10, 2014

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 10, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---